**UNITED STATES DISTRICT COURT**

**WESTERN DISTRICT OF LOUISIANA**

**MONROE DIVISION**

| | |
|---|---|
| **UNITED STATES OF AMERICA** | **CASE NO. 25-cr-0341-01-01** |
| **VERSUS** | **JUDGE TERRY A. DOUGHTY** |
| **SIRKEAMEO VANDRELL JOHNSON (01)** | **MAG. JUDGE KAYLA D. MCCLUSKY** |

**REPORT AND RECOMMENDATION**

Before the undersigned Magistrate Judge, on reference from the District Court, is a Motion to Suppress [doc. #40] filed by Defendant Sirkeameo Vandrell Johnson ("Johnson"). The motion is opposed. [doc. #42]. For reasons stated below, **IT IS RECOMMENDED** that the motion be **DENIED**.

**BACKGROUND**

On August 29, 2025, Anthony Cowan ("Cowan"), who is a detective with the Monroe Police Department ("MPD"), as well as a Task Force Officer for the Bureau of Alcohol, Tobacco, Firearms, and Explosives ("ATF"), presented an application for a search warrant to Fourth Judicial District Judge Walter M. Caldwell. [doc. #40-1]. The application Cowan presented specifically requested authorization to search Verizon Wireless telephone records using the number associated with Johnson. *Id.* These records included real-time location data, without geographical limits, as well as installation of a pen register and trap and trace device. *Id.* Cowan requested this data for the thirty days following the search warrant being granted, as well as the historical data for the thirty days preceding it, for a total of 60 days' worth of data. Cowan alleged in his application for the search warrant that a confidential source previously made

controlled purchases from Johnson. [doc. #40-1, p. 3]. These controlled purchases included (1) one ounce of methamphetamine on August 7, 2025; (2) a Rossi .38 caliber revolver on August 21, 2025; and (3) a Taurus 9mm pistol and one ounce of methamphetamine on August 27, 2025. *Id*. Cowan noted that these purchases were set up using the telephone number for which the warrant was sought. *Id*. Judge Caldwell granted the warrant without modification. [doc. #40].

On September 2, 2025, Fourth Judicial District Judge Alvin Sharp issued a search warrant for Johnson's home to look for evidence related to his firearms and drug offenses. [doc. #42]. The following day, September 3, 2025, law enforcement officers attempted to execute the warrant as Johnson returned home. *Id*. Johnson initially fled on foot before being apprehended. He was found in possession of a loaded 9mm Springfield magazine and a cellphone. *Id*. Officers additionally searched Johnson's vehicle, which contained 164 grams of methamphetamine. *Id*. Two days later, on September 5, 2025, a resident near where Johnson had fled reported to police finding a Springfield Hellcat 9mm pistol in his yard with no magazine in it. *Id*. The magazine was examined and fit the gun found on Johnson's person on the day of his arrest.

On December 3, 2025, Johnson was indicted on six[1] counts: (1) conspiracy to possess with intent to distribute methamphetamine; (2) distribution of methamphetamine on August 27, 2025; (3) possession of a firearm by a convicted felon also from the August 27, 2025 transaction; (4) possession with intent to distribute methamphetamine on September 3, 2025; (5) possession

[1] This instant Indictment is one of two Indictments against Johnson pending before this Court. The Indictment at issue contains a total of nine counts, but the last three counts are charged only against Johnson's alleged co-conspirator. This Report and Recommendation addresses only the charges against Johnson.

of a firearm in furtherance of a drug trafficking offense from September 3, 2025 transaction; and (6) possession of a firearm by a convicted felon from that same September 3, 2025 transaction.

On February 18, 2026, Johnson filed the instant motion to suppress seeking the suppression of evidence found as a result of the search of his cellphone. [doc. #40]. Johnson argues first that the data requested from his cellphone constitutes a general warrant. *Id*. Next, Johnson argues that the cellphone served as a tracking device and was, therefore, subject to the procedural requirements of Rule 41 of the Federal Rules of Criminal Procedure. *Id*. Specifically, Johnson argues that the plain meaning of tracking device should be applied to the warrant given the extensive nature of information the data provided to law enforcement. *Id*. Finally, Johnson argues that the search warrant for his home was fruit of the poisonous tree and any resulting evidence must be suppressed. *Id*. Johnson argues that, because the second search warrant's application was based on information gathered through an unconstitutional general warrant, any evidence discovered therein is tainted and must be suppressed.

On March 4, 2026, the Government filed an Opposition to Johnson's Motion to Suppress. [doc. #42]. The Government argues that the warrant was executed in good faith and upon probable cause. *Id*. Though contending that the warrant was legal, the Government argues, in the alternative, that the good-faith exception applies to the ping warrant because a reasonably well-trained officer would not have known that the warrant was illegal. *Id*. Even if the Court were to find that the warrant was illegal and that the good-faith exception does not apply, the Government asserts that the issuing judge had a substantial basis in probable cause to issue the warrant. *Id*. Because Cowan pointed to the three controlled purchases, including both drugs and firearms, the Government argues Judge Caldwell had sufficient probable cause for issuance.

Further, the Government asserts that the search warrant was not a general warrant. *Id.* The Government distinguishes the Fifth Circuit precedent cited by Johnson, noting that the holding in that case was premised on the "general, exploratory rummaging" through data of 592 million individuals' locations, rather than looking at the data for a single person, as is the case here. *Id.*

Finally, the Government argues that Rule 41 does not apply to the ping warrant, as the rule only applies to warrants issued upon the request of a federal law enforcement officer or an attorney for the government. *Id.* (citing FED. R. CRIM. P. 41(b). Because Cowan applied for the warrant in his capacity as an MPD detective, rather than as an ATF TFO, the Government argues that the warrant was subject only to the requirements of state law, not Rule 41. *Id.*

On May 20, 2026, following an oral motion made by Johnson, new counsel was appointed to represent Johnson. [doc. #48]. Accordingly, the Court withheld a ruling on Johnson's Motion to Suppress until a status conference could be conducted to permit counsel to make determinations on what, if any, supplementation needed to be provided on the motion. Id. On June 9, 2026, a status conference was held between the parties and a continuance was granted. [doc. #54]. On June 12, 2026, a new scheduling order was created in the instant case which provided Johnson with a deadline of June 23, 2026, to supplement the Motion to Suppress. [doc. #55]. No supplement was filed, and the time to do so has elapsed. Accordingly, the motion is now ripe.

## <u>LAW AND DISCUSSION</u>

### I. <u>Legal Standard</u>

The Fourth Amendment of the United States Constitution guarantees "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches

and seizures." U.S. CONST. AMEND. IV. The protections of the Fourth Amendment extend to the states through the Fourteenth Amendment. *Dunaway v. New York*, 442 U.S. 200, 207 (1979). "The proponent of a motion to suppress has the burden of proving, by a preponderance of the evidence, that the evidence in question was obtained in violation of his Fourth Amendment rights." *United States v. Iraheta*, 764 F.3d 455, 460 (5th Cir. 2014) (citations omitted).

Evidence obtained in violation of the Fourth Amendment is generally excluded and "cannot be used in a criminal proceeding against the victim of the illegal search or seizure." *United States v. Wallace*, 885 F.3d 806, 810 (5th Cir. 2018) (quoting *United States v. Calandra*, 414 U.S. 338, 347 (1974)). The purpose of this exclusionary rule is to deter unlawful police conduct. By refusing to admit evidence gained as a result of conduct that deprives the defendant of some right, "'the courts hope to instill in those particular investigating officers, or in their future counterparts, a greater degree of care toward the rights of the accused.'" *United States v. Pope*, 467 F.3d 912, 916 (5th Cir. 2006) (quoting *United States v. Leon*, 468 U.S. 897, 919 (1984)). However, the exclusionary rule is not without limits, and suppression of evidence should be "ordered only on a case-by-case basis and only in those unusual cases in which exclusion will further the purposes of the exclusionary rule." *Id*.

## II. General Warrant

Johnson's first argument is that the warrant Cowan received for the GPS cellphone data was an unconstitutional general warrant. General warrants are warrants that "specif[y] only an offense," leaving "to the discretion of the executing officials the decision as to which persons should be arrested and which places should be searched." *Steagald v. United States,* 451 U.S. 204, 220 (1981). It is undeniable that general warrants are plainly unconstitutional. Indeed, "it would be a needless exercise in pedantry to review again the detailed history of the use of

general warrants as instruments of oppression from the time of the Tudors, through the Star Chamber, the Long Parliament, the Restoration, and beyond." *Stanford v. Texas*, 379 U.S. 476, 482 (1965). Therefore, the Government must generally obtain a warrant supported by probable cause and particularity before requesting such information. *Carpenter v. United States*, 585 U.S. 296, 316 (2018).

In support, Johnson points to Fifth Circuit precedent regarding geofence warrants. *United States v. Smith*, 110 F.4th 817, 836 (5th Cir. 2024). However, the Court is not persuaded that the holding in *Smith* is factually similar enough to the present case to warrant the same result.

The Fifth Circuit in *Smith* reasoned that the utilization of a geofence warrant constituted an unconstitutional general warrant as geofence warrants "present the exact sort of 'general, exploratory rummaging'" that the Fourth Amendment was designed to prevent. *Id*. at 837 (quoting *Coolidge v. New Hampshire*, 403 U.S. 443, 467 (1971)). However, the *Smith* Court's analysis did not turn on the access to geographical data *per se*. Instead, the Court took issue with the warrant's dragnet nature which "allow[ed] law enforcement to rummage through troves of location data from hundreds of millions of Google users *without any description of the particular suspect or suspects to be found*." *Id*. (emphasis added). Further, the Fifth Circuit has found no volitive generality for similar warrants for a particular suspect's phone and corresponding location. *United States v. Beaudion*, 979 F.3d 1092, 1099 (5th Cir. 2020); *United States v. Washington,* No. 24-60566, 2025 WL 3110794 (5th Cir. Nov. 6, 2025) ("Concerning the Fourth Amendment's particularity requirement, '[r]easonable specificity is required, not elaborate detail'") (quoting *United States v. Triplett*, 684 F.3d 500, 504 (5th Cir. 2012)(citation omitted)).

While location data for a particular individual's phone number may be extensive, the extensive nature does not in itself create a warrant lacking in the requisite specificity. The warrant presented in this case, in fact, cures the very deficit presented by the *Smith* court by naming Johnson as the particular suspect to be the target of the warrant. *Smith*, 110 F.4th at 837 (5th Cir. 2024). Thus, Johnson has failed to demonstrate that Cowan's warrant was insufficient, or that he exceeded the bounds that the warrant granted him. Therefore, the warrant was not an unconstitutionally general warrant, and it is recommended that the Motion to Suppress be denied on this basis.

**III. Rule 41**

Johnson next argues that phones are tracking devices which are subject to the procedural requirements of Federal Rules of Criminal Procedure 41. [doc. #40, p, 4]. However, the Court need not reach the merits of that argument because the rule is inapplicable to this warrant on its face. "[Rule 41] applies only to warrants issued 'upon [the] request of a federal law enforcement officer or an attorney for the government'" and is "inapplicable to State search warrants even though ... the evidence obtained from the search [is] offered in a federal prosecution." *United States v. Shaw*, 920 F.2d 1225, 1229 (5th Cir.1991) (citing *United States v. McKeever*, 905 F.2d 829, 830, 932-33 (5th Cir. 1990).

Although Cowan was cross deputized as both an ATF TFO, as well as a detective for MPD, he sought this warrant in his capacity as a *state* officer, after obtaining probable cause to believe a *state* law offense was being committed and ultimately sought and obtained the signature of a judge in the Fourth Judicial District of the *State of Louisiana*.[2] Therefore, the

[2] The Court ultimately finds no error with this particular warrant and its execution. However, if cross- deputized officers continue to rely on state court procedures to obtain state-court warrants

warrant is a valid state court warrant and is not governed by procedural rules set forth in the Federal Rules of Criminal Procedure. Further, given this conclusion, there is no reason to address the contention that the ping warrant was an effective tracking device under Rule 41. It is recommended that the Motion to Suppress be denied on this basis as well.

**IV. Good-Faith Exception**

Even if Rule 41 compliance were required and the warrant failed to meet that standard, evidence is not subject to suppression under the facts of this case. The Supreme Court has held that a warrant is generally required for certain searches. The warrant requirement upholds the notion that the "inferences which reasonable men draw from evidence to decide if probable cause exists should be drawn by a neutral and detached magistrate instead of being judged by the officer engaged in the often competitive enterprise of ferreting out crime." *United States v. Morton*, 46 F.4th 331, 335 (5th Cir. 2022) (en banc) (citing *Johnson v. United States*, 333 U.S. 10, 14 (1948) (internal quotation marks omitted)). While the warrant requirement imposes a pre-search burden on law enforcement, it also confers a post-search benefit upon them because, even in doubtful or marginal cases, a preference is accorded to the lawfulness of the warrant. *Id*. (citations omitted).

Deference to the judge issuing the warrant and the judicially created exclusionary rule's focus on deterring police misconduct resulted in the "good-faith exception to the suppression remedy . . ." *Morton*, 46 F.4th at 336 (citation omitted). Application of the good-faith exception is reflected in the first step of a two-step process for analyzing a motion to suppress evidence discovered pursuant to a search warrant. *United States v. Sibley*, 448 F.3d 754, 757-

---

when it may be anticipated that the case will be brought to federal court, it is unsurprising that they will continue to face challenges in this Court.

758 (5th Cir. 2006) (citation omitted). If this good-faith exception applies, then the inquiry ends. *Gibbs*, 421 F.3d at 357 (citation omitted). If the good-faith exception does not apply, then the court must proceed to the second step of the analysis to determine whether the warrant was supported by probable cause. *Id.*

When an officer obtains evidence in an "objectively reasonable good-faith reliance" on a search warrant, the exclusionary rule's "deterrence rationale loses much of its force," and the evidence is admissible. *Pope*, 467 F.3d at 916. As the Fifth Circuit explained,

> [t]his is in part because an issuing-judge's probable cause determination, based on an underlying affidavit, is afforded great deference. Of course, such deference is not boundless, but, where the officer's conduct is objectively reasonable, excluding the evidence will not further the ends of the exclusionary rule in any appreciable way. Thus, when an officer acting with objective good faith has obtained a search warrant from a judge . . . and acted within its scope, the officer cannot be expected to question the magistrate's probable cause determination . . .

*Gibbs*, 421 F.3d at 357–58 (internal citations and quotation marks omitted).

In short, "[f]or the good-faith exception to apply, the executing-officer's reliance on the issuing-judge's probable-cause determination and the technical sufficiency of the warrant must have been objectively reasonable." Gibbs, 421 F.3d at 358 (citation omitted). The good-faith inquiry "'is confined to the objectively ascertainable question whether a reasonably well trained officer would have known that the search was illegal despite the magistrate's authorization.'" *United States v. Maggitt*, 778 F.2d 1029, 1035 (5th Cir. 1985) (quoting *United States v. Leon*, 468 U.S. 897, n.23 (1984)). Stated another way, "if it is plainly evident that a magistrate or judge had no business issuing a warrant, then police cannot objectively rely on the warrant." *Id.* (quoted source and internal quotation marks omitted).

Importantly, the good-faith exception asks, "not whether the issuing judge made a proper determination of probable cause, but whether the agents reasonably relied on the judge's

determination in light of the information set forth in the affidavit." *United States v. Pigrum*, 922 F.2d 249, 252 253 (5th Cir. 1991) (citations omitted). Ultimately, a reviewing court will defer to an issuing judge's probable cause determination in signing a warrant unless:

> (1) the issuing judge was misled by information in an affidavit that the affiant knew was false or would have known was false except for his reckless disregard of the truth;
> (2) the issuing judge wholly abandoned his judicial role in such a manner that no reasonably well trained officer should rely on the warrant;
> (3) the underlying affidavit is "bare bones" (so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable); or
> (4) the warrant is so facially deficient . . . that the executing officers cannot reasonably presume it to be valid.

*Gibbs*, 421 F.3d at 358 (citing *United States v. Leon*, 468 U.S. 897, 923 (1984)) (internal quotation marks omitted); *see also Morton*, 46 F.4th at 336. The Government bears the burden of demonstrating that the good-faith exception is applicable. *United States v. Gant*, 759 F.2d 484, 487-488 (5th Cir. 1985).

For the purpose of the second step of the search warrant analysis, probable cause exists when under the "totality of the circumstances . . . there is a fair probability that contraband or evidence of a crime will be found in a particular place." *United States v. Newman*, 472 F.3d 233, 237 (5th Cir. 2006) (quoting *Illinois v. Gates*, 462 U.S. 213, 238 (1983)). A magistrate requires only a substantial basis for concluding that a search will uncover evidence of wrongdoing. *United States v. Allen*, 625 F.3d 830, 840 (5th Cir. 2010) (citation omitted). Relatedly, "[w]hen an affiant relies upon information obtained from an informant, the affiant must provide sufficient information to allow the magistrate to determine, by reviewing the totality of the circumstances, whether the informant's information is sufficient to create probable cause." *United States v. Brown*, 567 Fed. App'x. 272, 282 (5th Cir. 2014) (citation omitted).

No evidence in the instant case leads this Court to second-guess the probable cause determination of the issuing judge or to suggest that the officers' reliance upon that determination was not objectively made in good faith. Johnson does not contend that Judge Caldwell wholly abandoned his judicial role in issuing the warrant or that the warrant was facially deficient. Additionally, there is no indication that Cowan provided false information in his affidavit. Finally, as discussed previously, the affidavit is not "bare bones." The Court has already determined that the warrant contains sufficient facts to support a finding of probable cause. Therefore, it is recommended that the Motion to Suppress be denied on these bases as well.

## CONCLUSION

For the foregoing reasons, **IT IS RECOMMENDED** that Johnson's Motion to Suppress [doc. #40] be **DENIED**.

Under the provisions of 28 U.S.C. § 636(b)(1)(C) and FED. R. CRIM. P. 59(b)(2), parties aggrieved by this recommendation have **fourteen (14) days** from the date of this report and recommendation to file specific, written objections with the Clerk of Court, unless an extension of time is granted under Fed. R. Crim. P. 45(b). A party may respond to another party's objections within **fourteen (14) days** from the filing of the objections. Counsel are directed to furnish a paper copy of any objections or responses to the District Judge at the time of filing.

A party's failure to file timely written objections to the proposed findings, conclusions and recommendation set forth above shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by

the district court. *See Douglass v. U.S.A.A.*, 79 F.3d 1415 (5th Cir. 1996) (en banc).

THUS DONE in Chambers on this 18th day of August, 2026.

KAYLA DYE MCCLUSKY
UNITED STATES MAGISTRATE JUDGE